Good morning, Your Honor. May it please the court, I am Elsa Martinez and I represent the petitioner Mr. Rubalcaba. I would like to reserve five minutes for rebuttal. We'll try to help you but watch the clock. Petitioner's case rests on the fact that the Board of Immigration Appeals erred when it held that it lacked jurisdiction over petitioner's sui sponte motion to reopen. Petitioner's position is that the regulation on sui sponte reopening did not provide a temporal or a geographical limit. However, today I am asking the court to find that the new Attorney General's regulations eliminating sui sponte motions to reopen not be given deference because it is not ambiguous. Because it is not what? I'm sorry, what did you say? Because it is not what? Ambiguous. Ambiguous. In 1958, the Attorney General regulated that immigration judges could reopen sui sponte in cases where it had rendered a decision. Ms. Martinez, do you know about, when you said new regulations right now, I want to make sure I understand what you were talking about because it appears, you know, that there are, as of earlier this year, this year a new regulation that went into effect and I wanted to find out what effect that had on our court. Yes, Your Honor, that's the federal regulation 81588 and which took effect on January 15th of this year. So essentially, the Attorney General plainly and explicitly stripped the immigration courts and the Board of Immigration Appeals from its ability to sui sponte to reopen for, except in very rare circumstances. But what does that mean for our case? My argument, Your Honor, is that that regulation should not be given deference because, in fact, it is, should not be given our deference under the Keysore test that was just decided by the Supreme Court. So what it means for this court essentially is that we know that sui sponte reopening has been conducted by the Board and the immigration judges for decades. Essentially, the Attorney General on January 15th made new law. It made law that Congress had not provided for. Congress has never codified sui sponte motions to reopen. So essentially, the Attorney General said, and only to the four national litigants, you may not move to reopen. Our immigration court does not have the authority to reopen, except for three very narrow exceptions. Yeah, so I guess my question is, if we decide this case, it goes back to the immigration court, would they apply that regulation? And so therefore, is this case moot? I'm asking that this court hold that that regulation should not be given deference, that the regulation is actually without authority because it doesn't espouse an agency's position. So what I'm actually asking is a tall order, but I am asking that this court hold that the AG's regulation that is to be in effect today and would apply to my client because it also has a retroactivity of cases that have been litigated or pending or moving through the What I'm asking is that this court hold that no deference should be given to that regulation, that regulation is actually without authority. Counselor, you're not, seems to me, you're not saying that we shouldn't give it deference. You're saying that it's ultra vires. Correct. Usually, when you use the term, not give it deference, it's with regard to some question of interpretation. And that's what our keys or is about. But you're really saying, aren't you, it's ultra vires? I am, Your Honor. That's exactly what I'm saying. Is that because it is contrary to a statute that is certainly the the AG and the BIA make regs about sua sponte reopenings in a whole series of circumstances. So why is this one any different that it should be thought to be ultra vires? Usually that argument would say, well, look at this statute, which says sua sponte means thus and so. But but is that your argument? Or tell me why it is it is not just not to defer to but invalid. That's correct. My argument is that invalid because Congress could have codified sua sponte motions to reopen and it did not. In fact, in 1997, in the INA, it gave it the temporal requirements of the 90 day motion to reopen. And it provided for three specific things in 1997. However, the sua sponte authority was not touched, as well as a departure bar. So my argument is that it's not in the act. And the Attorney General's attempt to create law through regulation is just that it's acting ultra vires. When you say it's the it that is not in the act, is is sua sponte reopening at all? Other than the, the board, I'm sorry, the Congress created the Board of Immigration Appeals to decide disputes and immigration proceedings. And there's been different immigration acts throughout the years, the most recent in 1997, where it did create a one motion to reopen within 90 days, it also specified that aliens must be 90 days of a final order. And it did not codify a board or an immigration judges authority to reopen to exercise from what you're saying that not only didn't codify it, it didn't address it. That's correct. Oh, or con, which are a little harder to say that if the Attorney General's have created sua sponte authority by these past regulations, that they can't alter it. I was thought you were going to tell me there was something in a statute that says sua sponte reopenings must be allowed. But you're not telling me that you're telling me that Congress didn't address it pro or con. Is that fair? That that is fair. But I'm also seeing that the fact that Attorney General's drastic stripping of that authority and practice that has been common for decades in immigration proceedings essentially is rulemaking or lawmaking. But counsel, if I understand your position correctly, you're saying that the because of the Supreme Court's got it right by deciding that I'll mend the race. Ben Mendez was not entitled to our deference that the regulation 1003.23 B one is not ambiguous. And under those circumstances, relying on a non ambiguous statute to create a regulation that limits sua sponte action to basically de minimis ministerial things is illegal. Is that your position? I couldn't have put it better, Your Honor. That is exactly my position. Okay. And what about what about the concept of retroactivity? Uh, if if if we agree with the analysis that I just mentioned, perhaps it's not a problem. But so far, we have not ruled on, and I don't know anybody else has ruled on whether the new regulation, whatever its validity, would be retroactive. If it was, you'd have a problem, right? I would. And so would many other people. And and it also would open the floodgates for the government to be able to reopen motions because these regulations effectively don't apply to them. They could move to reopen at any time, as many times as they wish. And for any reason, the fact that it applies retroactively to cases that have been moving through the courts or may already be in immigration proceedings as a result of a grant of a sua sponte motion to reopen those cases could be greatly affected. So you want you would like us to adopt the reasoning of the Tenth Circuit find that the de minimis activity regulation is ultra virus, as my colleague indicated, and be done with it. Is that correct? Yes. And I'm specifically speaking specifically speaking to the sua sponte portion of the regulations. Obviously, this regulation expands beyond that in Congress motions. But with regards to the sua sponte, at least as it pertains to Mr. Rubalcaba. You've got five minutes and 40 some odd second. You want to keep that time now? You want to keep chatting? I will keep that time for rebuttal. Thank you very well. Okay, let's now hear from the government. Ms. Wilson, please. Good morning and may it please the court. Sarah on behalf of the Attorney General. I'll start with the questions regarding the new regulations, since that's where we seem to be focused this morning. But this, we agree, we agree with petitioner in a sense than that the regulation really has no impact at this stage of the litigation. At this point, we don't think that this court has any ability to reach the question of whether or not those regulations are valid. Now, is that because we would apply the regulation that was enforced at the time that the original decision was made in this case? That's right. I mean, the question that's presented to this court is whether what the board did based on the laws existed at the time was was correct. We haven't brought forward a mootness motion in this case. Because you know, for a number of reasons, but in part, it's because the validity of that, of those new regulations are still an active litigation and district courts across the country. And there's really just no reason for this court to be to be trying to weigh in on that in a particular situation where it hasn't been applied in the event that this case is remanded. And the board would then have, you know, the opportunity to decide whether or not to apply the regulations to this particular case. And if they were to do that, there would be an opportunity for the petitioner to file another case, another petition for review from that decision with this in oral argument here. But those those are not at issue in the record that's before this court and are not things that are necessary for this court to decide this particular case. Because? Because that's not the basis for the decision that was entered by the board in this case. Here, the issue in this case is whether or not the departure bar was properly applied to a sua sponte motion to reopen. That's the question that's presented before the court. And until somebody comes forward with a with a motion asking you not to reach that question, because, you know, the new regulations have have rendered that question moot. We think that the the only issue that this court should be concerned about is the one that was presented and addressed by the board in this case. That Reyes Vargas is a correct reading of the statute under under the statute that governs this is not ambiguous, and therefore the ability to open this proceeding sua sponte remains without the bar. Is that correct? I'm not sure I completely understand the question, your honor. Are you asking whether this court could reach the reach the merits of of the of the attack or the the reasoning of the Tenth Circuit, which applied a different, you know, analyzed a different set of regulations to figure out whether or not the motions were? What I'm focusing on is the bar. As I understand it, I understand that the IGA took the position that the the bar applied, and it did it based upon an understanding that we're going to defer to the agency's regulations under our, the Supreme Court came along and said, no, we're not we're not doing it the same way. The Tenth Circuit in Reyes Vargas said this is not an ambiguous statute and under the circumstances the bar in a sua sponte situation under the the previous regulation does not bar. The bar is gone, basically. Is that your understanding as well? My understanding of what the court in the what the Tenth Circuit held, your honor? I think that's the effect of the Tenth Circuit's reasoning would be. The effect of the Tenth Circuit's reasoning would be, I think, a remand here, but I don't think that this court should should follow the Tenth Circuit. But before I even get to that point, I want to make clear that everything I was speaking to before was about the new regulations that went into effect in January. I that's the part that I think that this court really cannot cannot reach here. But we have a. Ms. Wilson, so you're saying that because of the new regulation, I mean, the new regulation has no bearing here and the case is not moot because of the new regulation. Is that correct? We are not arguing that it's moot at this point. And one of the reasons is that the regulation is still actively being litigated. And a secondary reason is that they'll still have to be an application by the agency, a determination on how the retroactivity of that new regulation will be applied. And so until that's done, we just can't tell the court with a straight face that that there's no case or controversy here. So I think for that reason, the court need not worry at all about these new set of regulations. But turning back to the question of the existing regulations, we think that we think the board here properly applied its own its own precedent to deny the untimely motion to reopen, which in this case was filed more than 20 years after the petitioner's departure from the United States. And this, you know, traditionally there are two avenues in which you could reopen a closed removal proceeding or a closed removal order. But here the petitioner has conceded that the statutory means of doing that is not available to him. So as a result, he is exclusively relying on the immigration judge's sua sponte reopening authority. But that authority is very clearly by regulation, by long-standing regulation, cabined in a way that prohibits reopening subsequent to the departure from the United States. The only issue that was presented here in the briefing to this court, and indeed the only issue that was presented to the agency about this particular regulation, was whether or not the application of the departure bar is contrary to this court's existing precedent. And I think if the court really focuses and narrows... How do we ignore Kaiser? I think it's K-I-S-O-R. Because it sounds like you want us to proceed in applying matter of Armendariz-Mendez and defer to the agency. And I'm not quite sure I understand how we would ignore the Supreme Court's decision in Kaiser. Please explain to me how you think we could do that. I'm not suggesting that you have to ignore it, but I think our first argument is that it really should not be addressed here because it hasn't been raised, it hasn't been briefed. It was, I think in our view, waived in the initial briefing in this case. The only arguments that have been made in this briefing by the parties is about whether or not the Ninth Circuit precedent applies or would bar here. And there's just not been any discussion of whether or not we need to defer or whether there's an ambiguity that wasn't properly addressed in a manner that's owed deference under our or Kaiser. I'm sorry, I thought I was interrupting. I'm not quite sure I understand still, other than we're supposed to, I mean, we're supposed to keep blinders on and not acknowledge what the Supreme Court decided in Kaiser. I'm just curious, again, how we ignore what happened in that case and applying it here. It seems to be intervening authority. I think that there's still a responsibility on the part of the party appealing here to make an argument to you that Kaiser somehow changes what the board did or alters the correctness. But that argument isn't anywhere in the briefing here. So that's only the point we're making. And so if this court decides to reach it anyway, I think we would ask that we have the opportunity to brief it in more detail so that this court can have the benefit of a complete understanding of both parties' positions on this. You're aware of Kaiser? Oh, of course, yes. So can you make your argument now on why Kaiser would not result if we applied it, why we would result if we would than the Tenth Circuit did in Reyes? Well, I think that what the Tenth Circuit did was very different from what, you know, what the issue that's really been kicking around in the briefing here. In the briefing here, the court's really been focused on a different ambiguity, the ambiguity about the use of the present tense in the regulation. That's very different than the question that the Tenth Circuit was addressing with regard to what is the meaning of filing a not a sua sponte use of authority is implicated by that reference in the statute or in the regulation to the filing of a motion. So that's why I think that briefing would be really helpful here for us to really narrow down on what is the argument that we're trying to get at. But stepping back, I was going to say, well, the idea of they didn't make a certain argument when the law is still there. I didn't usually think that people forfeit arguments if a judge comes up with it rather than the council. So if you come back to at least what I thought part of this was about is what is your argument that sua sponte reopening is covered by a regulation that talks about a motion to reopen now? Because I always thought that even though an alien may use the words a motion to reopen sua sponte, it isn't really a motion. It's asking the court, the immigration court, to act sua sponte. And if that's correct, then how does your regulation even cover that? And we can read the regulation and say, perhaps as the Tenth Circuit did, it just doesn't cover a request for sua sponte reopening. Of course, if we rule that way, there are lots of reasons that the IJ gave to deny it, but they're not the ones the BIA relied on. Is that a fair reading? That is a fair reading. We would disagree with the Tenth Circuit's decision. Tell me why motion to reopen covers request for the judge to act sua sponte. Well, yes. So historically, even if you look at the new regulations that we've been discussing previously, there's a really good discussion there about how the sua sponte reopening authority has been almost exclusively done based on motions practice. The courts almost never have resorted to doing that without a record of a motion. And so if you look at the history of the way that this regulation started and the way that it's been used practically through the agency, these sua sponte motions are commonplace, but that is the triggering event for a court to consider its sua sponte authority. So you're saying that the sua sponte motion really isn't sua sponte, it's based on the motion of a party? That is right. That's the traditional practice in immigration court. So if you look back to that regulation you asked us to discuss, there is a discussion in that regulation regarding the use of sua sponte motions in immigration court. So I think if you are looking at the text of this regulation with that practice and that understanding, that 70 years of use of that statute in mind, you'd have to question whether it really is clear on the face of it. And I'll tell you, your court's precedent and decision in LEND supports that. Unlike the Tenth Circuit, this circuit has said that this regulation is ambiguous as it applies to sua sponte motions. It was talking about a different text. That was pre-Kaiser. That's right. So I think that you're right. Kaiser has told us that we need to really focus on whether a term is genuinely ambiguous and use all of the tools. And it's sending a clear message to the courts that we really need to revisit how we review and perhaps give less deference in the process to the agency. So it sounds like you're arguing in a world that doesn't have Kaiser in it. And so that's why I'm a little, you know, struggling a bit to understand because we're not in that world. We're in the world of Kaiser and we can't ignore it. And so give me your best argument why that term is not genuinely or is genuinely ambiguous at this point. I think it is. So I think that the LEND decision would come out the same way under Kaiser. I'm not trying to suggest that Kaiser doesn't exist. I'm suggesting that this court is dealing with a background where you've already analyzed this issue and given some really good arguments for why it's unclear whether this regulation should apply to individuals filing sua sponte motions. So I think the first argument would be here we have a motion and it was an on a motion seeking sua sponte authority. Here the person has no, the petitioner had no opportunity to file a statutory motion seeking reopening. So we are dealing in the context of a motion asking the court to consider whether or not to use that. So I think especially as applied here, we would have a good argument for why it was properly applied given the text of the statute. But it's also, I think the court got it right when it said in LEND that it's unclear whether the phrase is subject to removal proceedings refers to like what point in time it's referring to, whether or not that's at the point of removal, whether or not that's at the time the person files the motion to reopen. Because if you look at the Armendariz decision, the board's decision interpreting this regulation, they make a very strong point with respect to the history of the statute pointing out that it has been applied to individuals in this very same that the regulation really makes very little sense if it's read that way because it would apply to virtually no one. Because there is no opportunity to file a motion to reopen when your removal proceedings are still open. There would in fact be nothing to reopen. So I think reading the history of that, reading the language, the way that it's, the way that the present tense language is used and connection with the traditional practice of using motions to trigger a sua sponte consideration of reopening, all makes sense here. Okay, your time is up. Let me ask my colleague whether either has additional questions for Ms. Wilson. I do, I do. I have one because I just want to make sure I understand because there's two avenues that could be approached here. One is the, you know, on the weather departure bar is a, you know, is a jurisdictional limit and what we've been talking about on the sua sponte reopening. And I wasn't sure if this is what you were addressing in your, in your last statements here, but we could also focus on the narrow question on whether departure applies to Mr. Rubicaldo's case based on when he departed. And if we focus on when he departed, I just want to make sure I understand what your argument is. So our argument is that the departure bar here, that all this, this court has previously addressed the departure bar regulation in the context of whether or not it limits the, the authority of, the ability of the person to file. You're saying Lynn, that we, and maybe I'm confused, but did you say Lynn is a good decision or is not a good decision that we should be looking at? Because it sounds like you're using it to say it's good in certain respects, but, but Lynn was, you know, pretty clear that on the when he, the departure happens. And so are you saying we don't defer to Lynn on that point? So you wouldn't, this court can't follow Lynn. It predates the agency's decision in Armendariz, which adopted a contrary interpretation of the regulation. So I think under brand X, you would defer to the board's decision rather than Lynn. You, you said what earlier at one point that Lynn was correct. And so I was trying to figure out what you were talking about because your agency rejected Lynn. So our agency rejected Lynn on the interpretation, but it agreed with Lynn with respect to whether the regulation is ambiguous. So step one, all, everybody's in agreement. This regulation is ambiguous and it wasn't a proper one for, for the agency to then step in and supply a reasonable interpretation of the regulation. And that reasonable interpretation here set out in Armendariz would prohibit the filing of a motion to reopen or prohibit granting of a motion to affirm that decision by the board finding that the regulation here barred the motion to reopen filed in this case. Thank you. Ms. Martinez, you have some remaining time. Briefly, our position is that the board got it wrong. It summarily dismissed the petitioner's motion to reopen on jurisdictional grounds. And so it did, the judge clearly did add other reasons. And the fact that the motion, which has been regulated to, to have to be in writing a motion to reopen could have been made previously orally. And then it was regulated to be in writing fact that we're using the language to respond to one invitation or a nudging to a judge that this merits an exercise of discretion should not discredit the fact that the prior regulations indicate that a judge may, if, if it finds it to be proper and it's in the exercise of discretion. So it's fine to reopen despite the departure. Other questions by my colleague? Do you have additional points you want to make, Ms. Martinez? No, not at this time, your honor. Thank you. Very well. We thank both counsel for their argument in this case. The case of Rubalcava versus Wilkinson is submitted.
judges: Boggs, M. Smith, Murguia